UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Russell James Frauendorfer,                        Civil No.: 08-709 (ADM/AJB)

          Petitioner,

vs.                                                **REPORT AND RECOMMENDATION**

Dwight Fondren, Warden,

          Respondent.

---

**I. Introduction**

    This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Russell James Frauendorfer's ("Petitioner") petition [Docket No. 1] for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The action has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(a).

    Petitioner is a federal prison inmate and is currently designated to the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone").  Petitioner is serving an aggregated 132-month sentence for Conspiracy to Commit Bank Robberies, Armed Bank Robbery, and Brandishing a Firearm While Robbing a Bank, in violation of 18 U.S.C. §§ 371, 2113(a), 2113(d), 924(c)(1)(a)(ii), and 924(c)(1)(c)(i).  This sentence was imposed by Judge Joseph F. Bataillon in the United States District Court for the District of Nebraska.  Petitioner has a projected release date of September 11, 2013, via Good Conduct Time ("GCT") release.

    Petitioner now seeks relief under an application for writ of habeas corpus.  Petitioner challenges the Bureau of Prisons ("BOP") authority to collect restitution under the Inmate

Financial Responsibility Program ("IFRP") as the sentencing court did not expressly set out a payment schedule to be implemented while he was incarcerated, therefore, Petitioner argues that the Judgment and Commitment Order ("J&C") issued by the sentencing court does not require payment of restitution while he is incarcerated. Furthermore, Petitioner contends that the BOP improperly removed him from his position in UNICOR when he failed to agree to the BOP's IFRP restitution payment schedules.[1]

For the reasons stated below, it is recommended that the petition [Docket No. 1] be **dismissed with prejudice**.

**II. Background & Procedural Status**

The J&C ordered Petitioner to pay a $300.00 special assessment and $4,712.00 in restitution. See Buege Decl., Ex. B, p. 5 [Docket No. 6]. The "Schedule of Payments" stated that Petitioner shall pay the special assessment "immediately." Id. at p. 6. Following release from incarceration, Petitioner was ordered to "make payments to satisfy the monetary penalty in monthly installments of $50.00 or 5% of [his] gross income, whichever is greater." Id. "The first payment [was to] commence 60 days following [Petitioner's] discharge from incarceration, and continue until the criminal monetary penalty [was] paid in full." Id. The J&C then states that "[u]nless the court has expressly ordered otherwise in the special instruction above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment." Id.

On January 19, 2005, FCI-Sandstone staff generated a payment plan/contract for

---

[1] Respondent concedes that Petitioner has exhausted his administrative remedies regarding his challenge. Id. at ¶ 15.

2

Petitioner via the IFRP[2] to assist him in paying his $300 special assessment and $4,712 in restitution. See Buege Decl. ¶ 7; see also Ex. E. Petitioner was provided information regarding the potential consequences of a refusing to participate in the IFRP and subsequently signed the contract. Id. He agreed to quarterly payments of $25.00 beginning in March 2005 until his financial obligations were satisfied. Id. Petitioner was not coerced to sign the contract. Id. at ¶ 7. He was also advised of the potential consequences of his failure to adequately fulfill his financial obligations. Id.

On May 12, 2005, Petitioner was assigned to UNICOR, Industries Gloves Sewing One. Id. at Ex. F. Petitioner made his first quarterly payment of $25.00 on June 9, 2005. Id. at Ex. G. In July 2005, Petitioner's financial contract was amended due to his employment with UNICOR. Id. at ¶ 8. Inmates assigned in grade one through grade four, which included Petitioner, ordinarily are expected to pay at least 50% of their allotted pay to their financial obligations. See 28 C.F.R. § 545.11(b)(2). Petitioner refused to sign the amended contract. Id. at Ex. H. Petitioner was thereafter placed on IFRP refusal status, and on July 25, 2005, he was removed from UNICOR. Id. at ¶ 8; see also Ex. F. He also incurred sanctions: immediate removal from UNICOR; placement in the lowest housing quarters; commissary restriction; and no work performance pay above $5.25 per month. See Pet. 3 [Docket No. 1].

On July 21, 2005, Petitioner filed a BP-8 "Informal Resolution Form" asking that he be

---

[2] IFRP was developed from the requirements of the Victim and Witness Protection Act of 1982, Victims of Crime Act of 1984, Comprehensive Crime Control Act of 1984, and the Federal Debt Collection Procedures Act of 1990, to facilitate the diligent effort on the part of all law enforcement agencies to collect court-ordered financial obligations. When an inmate has a financial obligation, BOP staff is required to help that inmate develop a financial plan and monitor the inmate's progress in meeting that obligation. 28 C.F.R. § 545.11. The staff must review an inmate's financial obligations, using all available documentation, including, but not limited to the Presentence Investigation Report and the J&C Orders. Id. at § 545.11(a).

allowed to call his attorney and/or write a letter to Judge Battaillon seeking clarification of the J&C with respect to when payment of his restitution began. See Pet., Ex. 2. Petitioner claims that he refused to sign the amended contract because the J&C stated that his restitution payments did not commence until release. Petitioner pointed to the statement: "Following release from incarceration, the defendant shall make payments to satisfy the criminal monetary penalty in monthly installments of $50.00 or 5% of the defendant's gross income, whichever is greater. The first payment shall commence 60 days following the defendant's discharge from incarceration, and continue until the criminal monetary penalty is paid in full." Id.[3] He also argued that this contention was supported by his claim that his co-defendant, Aaron Shanle, who was required to pay jointly and severally the amount of restitution with Petitioner, was not required to make payments on his restitution while in BOP custody. Id.

On August 8, 2005, Petitioner filed a BP-9 "Request for Administrative Remedy" reiterating his earlier arguments from the BP-8. See Pet., Ex. 3. At a minimum, he believed that the plain language of the J&C could support his alternate reading of the text. Id. Therefore, pursuant to Program Statement 5380.08, Petitioner asserted that "unit staff are to contact the U.S. Probation Office for clarification when it is unclear if the court-ordered obligation is to be paid while the inmate is in Bureau custody or as a condition of supervision." Id. Petitioner also stated that he had no issues with paying the $300.00 special assessment while incarcerated. Id.

BOP responded to Petitioner's BP-9 on August 25, 2005. Id. It claimed that the J&C

---

[3] In essence, Petitioner argued that this instruction "expressly ordered otherwise" regarding his payment of restitution while incarcerated. See Pet., Ex. 1, ¶ 5, p. 6 ("Unless the court has expressly ordered otherwise in the special instruction above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment.").

4

stated payment of criminal monetary penalties were due during the period of imprisonment unless the court expressly ordered otherwise. Id. That being said, BOP argued that the J&C did not expressly order that the restitution payments were to begin following incarceration, therefore, Petitioner was required to make payments towards his restitution during incarceration. Id. BOP did not believe there was a basis for relief and denied Petitioner's request. Id.

Shortly thereafter, Petitioner filed a BP-10 "Regional Administrative Remedy Appeal" reasserting his arguments regarding his obligation to pay restitution while incarcerated from both his BP-8 and BP-9. Id. at Ex. 4. He requested reinstatement of his UNICOR job, preferred housing, privileges, back pay, and cessation of collecting funds that were not due or payable. Id.

On October 19, 2005, BOP advised Petitioner that employment with UNICOR requires a financial plan of 50% of his UNICOR earnings. Id. Petitioner could not refuse to sign this plan, without being placed on refuse status, because a balance remained on the court-ordered special assessment. Id. BOP stated that while participation in IFRP was not mandatory, "non-participation will be considered as a refusal to participate, and [Petitioner] will not be considered for various program privileges as outlined in policy." Id. With respect to the payment of restitution issue, BOP stated that Petitioner's complaint had "some merit." Id. This issue was remanded back for additional review and a response from BOP, pending clarification from the sentencing court. Id.[4]

On January 5, 2006, Petitioner again agreed to participate in the IFRP. See Buege Decl.,

---

[4] Petitioner filed a BP-11 "Central Office Administrative Remedy Appeal" on November 28, 2005, and BOP responded on January 27, 2006. Id. at Ex. 5. The issues and arguments in these forms basically rehash the issues and arguments related to the BP-10. BOP did, however, indicate that Petitioner's restitution obligation was deferred pending clarification from the sentencing court. Id.

Ex. I. He agreed to monthly payments of $25.00 beginning in February 2006 until his financial obligations were satisfied. Id. Petitioner made a payment of $25.00 on February 8, 2006. Id. at Ex. G. The payment was applied towards his special assessment. Id. at ¶ 9.

On February 27, 2006, Petitioner's payment plan was amended to require quarterly payments of $25.00. Id. at Ex. I. Petitioner signed the amended plan and a payment of $25.00 was applied toward his special assessment on March 11, 2006. Id. at ¶ 10; see also Ex. G.

Subsequently, Petitioner made payments in June ($25.00), September ($50.00),[5] and December 2006 ($25.87).[6] Id. at Ex. G. On December 24, 2006, Petitioner agreed to an amended plan for $45.00 per quarter payments beginning in March 2007. Id. at Ex. I. In March 2007, Petitioner missed his quarterly IFRP payment and was placed in refusal status with his contract to remain active. Id. at ¶ 11; see also Ex. C, p. 3. Petitioner made a partial payment of $31.15 on December 11, 2007, but remained in refusal status. Id. at ¶ 11; see also Ex. G.

On November 14, 2007, Petitioner filed a second BP-8. See Pet., Ex. 6. In this request, Petitioner argued that BOP was unauthorized to create restitution and assessment fee repayment schedules per 18 U.S.C. § 3572(d)(2) and U.S. v. McGlothlin, 249 F.3d 783, 758 (8th Cir. 2001). Petitioner restated this argument in a second BP-9 dated November 15, 2007. Id. at Ex. 7. BOP

---

[5] Petitioner claims that another amended plan was agreed to in July 2006 directing him to pay $50.00 per quarter. See Pet. 4. Petitioner agreed to the plan and made his first $50.00 payment on September 8, 2006. Id. at 5. The Court would note, however, that this payment was applied on September 14, 2006 (see Buege Decl., Ex. G), and that there is no documentation of the July 2006 plan in the record.

[6] Petitioner claims that he only had $25.87 in his account that month to pay towards the $50.00 obligation.

rejected Petitioner's second BP-9 request as untimely. Id.[7]

On January 22, 2008, Petitioner again agreed to participate in IFRP with payments of $25.00 per quarter to commence in March 2008. Id. Buege Decl., ¶ 12; see also Ex. I.  Petitioner made his quarterly payment of $25.00 on March 8, 2008. Id. at Ex. G.  To date, Petitioner has paid $232.02 towards his special assessment. Id. at ¶ 12.  Payments toward his restitution will not commence until his special assessment has been fully paid. Id.

## III. Discussion

### A. Petitioner's Claims

#### 1. Petitioner's Obligation to Pay Restitution

Petitioner argues that "BOP rules governing IFRP specifically contemplate the situation where the prisoner is not subject to making payments during incarceration...[and] encourages prisoners to build up the balances in their trust accounts while incarcerated in preparation for payment upon release when the restitution is owing." See Pet. 6; see also BOP Program Statement 5380.08.  He claims that said provision applies here as the sentencing court set restitution payments to begin upon release. Id.  Petitioner later states, however, that he is not challenging the restitution order, but rather challenging the BOP's authority to set a payment schedule through the IFRP. See Reply 16 [Docket No. 10].

Despite Petitioner's latest contention, the Court finds that it lacks subject matter jurisdiction over this issue.  Petitioner's true claim is that his interpretation of the J&C regarding restitution is controlling (i.e., that restitution payments commence upon release) and that BOP violated the J&C upon implementing IFRP during his incarceration for restitution.  This

---

[7] BOP also rejected Petitioner's second BP-10 and BP-11 requests for timeliness reasons. See id. at Exs. 8-9.

argument runs counter to Judge Battaillon's intent that restitution payments be made by Petitioner while incarcerated and that said payments be subject to the IFRP as stated in paragraphs 5 and 6 of the J&C. See Buege Decl. ¶ 6; see also Ex. D.  Such a challenge goes to the actual imposition of the sentence and must be brought before the sentencing court on direct appeal or 28 U.S.C. § 2255 motion. See, e.g. Mickelson v. U.S., 2002 WL 31045849, at *2 (D. Minn. September 10, 2002)(noting that challenges to imposition of sentence must be brought before the sentencing court under § 2255, while challenges to execution of sentence must be brought before the court with jurisdiction over the prisoner's custodian under § 2241).

Ordinarily, Petitioner's improper § 2241 motion could have been construed as a § 2255 motion and transferred to the sentencing court.  In this case, however, there are two impediments: (1) Petitioner has already filed a § 2255 motion in the District of Nebraska; and (2) the statute of limitations for filing said motion has expired.

On April 6, 2007, Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence under § 2255 in the District of Nebraska. See [Docket No. 95](04-cr-64 (JFB/TDT)).  In that motion, Petitioner failed to seek clarification of the J&C.[8]  On August 11, 2008, Judge Bataillon denied Petitioner's motion. See Mem. & Order [Docket No. 107].  Petitioner thereafter filed an appeal with the Eighth Circuit Court of Appeals.  A second § 2255 motion may only be filed if it has been certified by a panel of the Eighth Circuit, and a certification only may be issued in rare circumstances. See 28 U.S.C. § 2255(h).  Here, Petitioner has failed to seek such relief, therefore, the Court finds this issue unripe for judgment.

Petitioner's improper § 2255 motion in front of this Court should also be denied as the

---

[8] Petitioner's only § 2255 claim was that his Sixth Amendment right to effective assistance of counsel was violated. Id.

8

statute of limitations has passed. Under § 2255, a one-year statute of limitations runs from that latest of: (1) the date on which judgment of conviction became final; (2) the date on which a governmentally created impediment to a motion was removed; (3) the date on which a right asserted was newly recognized by the Supreme Court and made retroactive; or (4) the date on which the facts supporting the claim could have been discovered with due diligence. See 28 U.S.C. § 2255. On January 29, 2007, Judge Battaillon notified Petitioner that he was time-barred from filing a § 2255 motion after April 3, 2007. See [Docket No. 94]. The Eighth Circuit entered its judgment in this case on January 3, 2006 (see [Docket No. 89]), and Petitioner had until April 3, 2006, to file a writ of certiorari. Id.; see also Clay v. United States, 537 U.S. 522, 532 (2003)(for purposes of starting the clock on § 2255's one-year limitation period, a judgment of conviction becomes final when the defendant's time expires for filing a writ of certiorari contesting the appellate court's affirmation of the conviction.). Petitioner filed his petition in this case on March 17, 2008-almost one year after the statute of limitations lapsed. Therefore, this Court cannot transfer his petition to the sentencing court as a § 2255 motion.

There is a narrow exception to the exclusive remedy rule of § 2255. Under this "safety valve," a federal prisoner may challenge the imposition of his sentence under § 2241 only if it appears that the remedy afforded by § 2255 is "inadequate or ineffective to test the legality of his detention." United States v. Lurie, 207 F.3d 1075, 1075 (8th Cir. 1986). A petitioner has the burden to establish that his remedy under § 2255 is inadequate or ineffective. DeSimone v. Lacy, 805 F.2d 321, 323 (8th Cir. 1986).

As stated earlier, Petitioner's basic argument is that the J&C expressly states that his obligation to pay restitution begins upon release from prison. As Petitioner states in his reply

briefing, "By the plain terms of the restitution order, [Petitioner] does not have an obligation to follow a restitution payment schedule while he is in custody." See Reply 1. A liberal interpretation of Petitioner's objections suggests that he filed his petition under § 2241, in part, because he knew he was barred from bringing a § 2255 motion on this issue. It appears, therefore, that Petitioner is arguing that § 2255 is "inadequate or ineffective," and he may use the "safety valve" to challenge his sentence in this Court under § 2241. Nonetheless, the Court determines that Petitioner is not entitled to the safety valve.

"Section 2241 is not an additional, alternative, or supplemental remedy to that prescribed under § 2255." Mickelson, 2002 WL 3104589, at *4. Indeed, "more is required than demonstrating that there is a procedural barrier to bringing a § 2255 motion." Id. (quoting Lurie, 207 F.3d at 1077). It is well settled that expiration of the statute of limitations is not sufficient to invoke the "safety valve." Id. Furthermore, a § 2255 motion is not inadequate or ineffective merely because § 2255 relief has already been denied or because petitioner has been denied permission to file a second or successive § 2255 motion. Id.

Here, Petitioner has failed to demonstrate that a § 2255 motion is inadequate or ineffective. He offers no evidence to establish that this claim could not have been brought within the one-year limitation for § 2255 motions. "The one-year period provided him reasonably opportunity to file for relief; and if that time period has expired, it is the result of his own doing and not due to any inadequacy in the statute." Lurie, 207 F.3d at 1077. Accordingly, the Court concludes that this claim should be dismissed with prejudice.

### 2. BOP Improperly Set Payment Schedule

Assuming *arguendo* that Petitioner truly does agree with the sentencing court's

interpretation of the J&C in that restitution payments are due immediately, the Court finds that Petitioner sets forth a cognizable § 2241 claim that BOP failed to execute the J&C by setting their own payment schedule. More specifically, Petitioner claims that while the sentencing court ordered him to pay restitution, because the court did not set a specific schedule of payments for restitution during his incarceration, that the BOP is not authorized to collect said payments through IFRP. See Reply 1.

Petitioner's challenge to the legality of his IFRP payment plan is based in large part on the opinion in United States v. McGlothlin, 249 F.3d 783 (8th Cir. 2001).[9] In that case, a criminal defendant asked the district court, at sentencing, to clarify the payment terms of his restitution obligation. The court replied, "I am not going to get into that...I will let the Bureau of Prisons tackle that problem." Id. at 785. The Court of Appeals found this response to be improper, and held that the district court could not make the BOP wholly responsible for determining restitution payment terms. The McGlothlin Court cited to 18 U.S.C. § 3572(d)(2) which "provides that the manner of payments and 'the length of time over which scheduled payments will be made shall be set by the Court.'" Id.

If McGlothlin provided the only relevant guidance from the Eighth Circuit, Petitioner would have a stronger position in this case. However, McGlothlin is not the final word on the BOP's proper role in effecting restitution payments. The Eighth Circuit held in Matheny v. Morrison, 307 F.3d 709 (8th Cir. 2002), that it is within the BOP's discretion to place an inmate

---

[9] Petitioner cites to two Ninth Circuit opinions, United States v. Gunning, 339 F.3d 948 (9th Cir. 2003)("Gunning I") and United States v. Gunning, 401 F.3d 1145 (9th Cir. 2005)("Gunning II"), and one District of Oregon decision, Soroka v. Daniels, 467 F.Supp.2d 1097 (D. Or. 2006), with similar holdings to McGlothlin. Nevertheless, the Court refuses to follow these cases as they carry no controlling weight in this Circuit.

in the IFRP payment plan when the inmate's restitution penalties were ordered due immediately without saying anything about payment terms. Id. at 712. "The immediate payment directive is generally interpreted to require payment to the extent that the defendant can make it in good faith, beginning immediately." Id.; see also United States v. Turner, 975 F.2d 490, 498 (8th Cir. 1992).

The present case is governed by Matheny, rather than McGlothlin, because the sentencing court in Petitioner's underlying criminal case-unlike the sentencing court in McGlothlin-did not expressly delegate any payment plan responsibility to the BOP. Here, as in Matheny, the sentencing court's order indicates by operation of § 3572(d)[10] that Petitioner's restitution debt is due in full immediately. The BOP's IFRP plan merely helps facilitate Petitioner's compliance with that order. Thus, the Court concludes (1) that the sentencing order entered in Petitioner's criminal case did not violate McGlothlin's proscription against delegating payment terms to the BOP, and (2) that Petitioner's IFRP payment plan must be upheld pursuant to Matheny.

This Court would also note that BOP in this instance did not usurp the sentencing court's authority by utilizing the IFRP program in this case as the J&C merely states that: "Unless the court has expressly ordered otherwise in the special instruction above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. *All criminal monetary penalties, except those payments made through the*

---

[10] "A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments."

*Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of court...*" See Buege Decl., Ex. B (emphasis added). The Court does not interpret such language to be an express delegation of payment terms to the BOP. Thus, Petitioner's argument that the BOP lacked authority to place him on a payment schedule must fail.

### 3. BOP Improperly Sanctioned Petitioner

Petitioner has also proffered a § 2241 claim that BOP "disregarded, and violated, their own policy [i.e., Program Statement 5380.08[11] upon] firing Petitioner from his job in UNICOR and placing him on 'IFRP Refuse' status, imposing sanctions which hindered, and/or made obsolete, his ability to earn and save money as well as participate in community-based programs." See Pet. 6-7. The Court, however, finds that said claim lacks any merit.

Participation in the IFRP is not mandatory, however, non-participation will be considered a refusal to participate in the IFRP. 28 C.F.R. § 545.11(d). If an inmate refuses to participate in the IFRP, or to comply with the provisions of his financial plan, he or she will not be considered for various program privileges. Id. For example, the inmate will not receive a furlough, will not be assigned to outside work detail, will be removed from UNICOR, will be quartered in the lowest housing status, will not be placed in a community-based program, and will be subject to a spending limit in the commissary. Id.

As previously stated, inmates assigned to grade one through grade four UNICOR positions, including Petitioner, are expected to pay 50% of their allotted pay toward their financial obligations. See 28 C.F.R. § 545.11(b)(2). Petitioner refused to sign the amended

---

[11] Program Statement 5380.08 states: When the dates of the court-ordered payment schedule follow the period of incarceration, the financial plan should address any other financial obligations, while encouraging inmates to save funds to help meet future obligations.

13

contract upon placement with UNICOR, and was thereafter placed on IFRP refusal status. Petitioner never disputed the fact that his special assessment was due "immediately." See Pet., Exs. 3-5. He also had no problem participating in the IFRP with respect to the special assessment due. Id. Notwithstanding his argument concerning his restitution payment obligation (which was deferred pending clarification of said obligation from the sentencing court),[12] BOP properly placed Petitioner on IFRP refusal status because his obligation to pay the special assessment remained during that same time.[13] In fact, Petitioner's obligation to pay the special assessment continues at this time as only $232.02 of the $300.00 has been paid.

Moreover, Petitioner's claim that the BOP improperly sanctioned him for refusing to participate in the IFRP by removing him from UNICOR lacks merit as an inmate has no right to a particular job assignment. See Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002). Thus, Petitioner's claim that BOP improperly sanctioned him for refusing to comply with UNICOR payment requirements should be denied.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and memoranda herein, **IT IS HEREBY RECOMMENDED** that the Petition under 28 U.S.C. § 2241 for Writ of Habeas

---

[12] The record is not clear whether Petitioner's restitution payment obligation are still in deferment in light of Judge Bataillon's email dated March 31, 2008, stating his intent regarding restitution.

[13] To date, all of Petitioner's payments under the IFRP have been applied solely to his special assessment. See Buege Decl., Ex. G.

Corpus filed by Petitioner [Docket No. 1] be **dismissed with prejudice**.

**IT IS FURTHER RECOMMENDED** that in light of the Court's recommendation that Petitioner's Motion for Injunctive Relief [Docket No. 14] be **denied as moot.**

Dated:   February 11, 2009

      s/ Arthur J. Boylan
      Arthur J. Boylan
      United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **February 25, 2009**.