UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Russell James Frauendorfer,

      Petitioner,    **MEMORANDUM OPINION
                AND ORDER**
vs.              Civil No. 08-709ADM/AJB

Dwight Fondren, Warden,

      Respondent.

_____

Russell James Frauendorfer, pro se.

Kimberly A. Svendsen, Assistant U.S. Attorney, Minneapolis, MN, on behalf of the Respondent.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge on Petitioner Russell James Frauendorfer's ("Petitioner") Objection [Docket No. 17] to Magistrate Judge Arthur J. Boylan's Report and Recommendation ("R&R") [Docket No. 16]. Also before the Court are Petitioner's Motion for Temporary Injunctive Relief [Docket No. 14] and Motion to Supplement the Pleadings [Docket No. 19]. The R&R recommends that the petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1] be dismissed with prejudice and the Motion for Temporary Injunctive Relief be denied as moot. For the reasons set forth below, Petitioner's Objection is overruled, the Petition is dismissed with prejudice, and the Motion for Temporary Injunctive Relief and Motion to Supplement the Pleadings are denied as moot.

## II. BACKGROUND

Petitioner was convicted of Conspiracy to Commit Armed Bank Robberies, 18 U.S.C. § 371, Armed Bank Robbery, 18 U.S.C. § 2113(a) & (d), and Brandishing a Firearm While

Robbing a Bank, 18 U.S.C. § 924 (c)(1)(A)(ii) & (c)(1)(C)(I), in the United States District Court, District of Nebraska. Pet. at 1. He is currently serving a 132-month sentence at the Federal Correctional Institution at Sandstone, Minnesota ("FCI-Sandstone"). Id. The Judgment and Commitment Order ("J&C") requires Petitioner to pay a $300 special assessment as well as $4,712 in restitution to the bank. Buege Decl. [Docket No. 6], Ex. B (J&C) at 5. The J&C provides:

> Having assessed the defendant's ability to pay, the court orders that the payment of the total criminal monetary penalties shall be due as follows:
>
> **The defendant shall pay the special assessment in the amount of $300.00 immediately.**
>
> **Following release from incarceration, the defendant shall make payments to satisfy the criminal monetary penalty in monthly installments of $50.00 or 5% of the defendant's gross income, whichever is greater. The first payment shall commence 60 days following the defendant's discharge from incarceration, and continue until the criminal monetary penalty is paid in full. The defendant shall be responsible for providing proof of payment to the probation officer as directed.**
>
> **The amount of restitution shall be paid jointly and severally with Aaron M. Shanle.**
>
> Unless the court has expressly ordered otherwise in the special instruction above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment.

Id. at 6.

Petitioner began serving his sentence at FCI-Sandstone on January 4, 2005. Pet. at 2. On

January 19, Bureau of Prisons ("BOP") staff generated an Inmate Financial Restitution Program[1] ("IFRP") payment plan/contract to implement the requirement that Petitioner pay the $300 special assessment and $4,712 in restitution ordered by the court.  Id.  The payment plan called for a restitution payment of $25 per quarter.  Id.  Petitioner was informed that if he did not sign the plan, he would be placed on "IFRP Refuse" status and would lose certain privileges.  Id.  Petitioner signed the plan and made his first payment in March 2005.  Id.

On May 12, 2005 Petitioner was assigned to UNICOR, Industries Job Sewing One and made a quarterly payment pursuant to his contract in June 2005.  Buege Decl. Exs. F, G.  Pursuant to 28 C.F.R. § 545.11, Petitioner was required to pay 50% of his UNICOR wages a month to satisfy his financial obligations.  BOP amended Petitioner's IFRP contract in July to conform with this requirement.  Id. at ¶ 8.  Before signing the amended contract, Petitioner asked to review his J&C and upon examination of the language quoted above, told BOP staff that his understanding of his restitution order was that he was not obligated to make restitution payments until 60 days after release from incarceration; BOP disagreed.  Pet. at 2; Buege Decl. ¶ 8.  Petitioner refused to sign the contract, was placed on IFRP refusal status, and removed from UNICOR on July 25, 2005.  Buege Decl. ¶ 8.  Pursuant to BOP policy regarding inmates on IFRP refusal status, Petitioner was placed in the lowest housing quarters, given commissary restrictions, and limited to no work performance pay above $5.25 per month.  Pet. at 3.

Petitioner filed an "Informal Resolution Form" on July 21, 2005, asking that he be able to

---

[1] IFRP was created to facilitate law enforcement agencies ability to collect court-ordered financial obligations.  BOP is required to help the inmate develop a financial plan to meet the obligation and must monitor the inmate's progress.  28 C.F.R. § 545.11.  BOP must use all available documentation in creating a plan including the Presentence Investigation Report and the J&C.

contact his attorney or the sentencing judge to clarify his J&C. Pet. Ex. 2. His request was denied, and Petitioner then filed a "Request for Administrative Remedy" asking that BOP contact the Probation Office to clarify his sentence pursuant to BOP Program Statement 5380.08. Id. Ex. 3. He also stated that he did not object to paying the special assessment because that condition was expressly ordered in the J&C. Id. BOP denied Petitioner's request for relief arguing that the J&C did not expressly order that the restitution payments begin following incarceration, and, therefore, Petitioner was required to make restitution payments during the term of his incarceration. Id.

In a "Regional Administrative Remedy Appeal," Petitioner reasserted his argument that the sentencing judge expressly ordered that he not pay restitution until 60 days after release from incarceration. Id. Ex. 4. On October 19, 2005, BOP informed Petitioner that UNICOR employment requires a financial plan of 50% of his UNICOR earnings and that he would be placed on refusal status for failing to sign because a balance remained on his court ordered special assessment. Id. BOP acknowledged, however, that his argument regarding the payment of restitution had "some merit" and remanded this issue for additional review and a response from BOP pending clarification from the sentencing court. Id. On November 22, 2005, BOP contacted a representative of the Nebraska Probation Office about the restitution issue and was informed the intent of the sentencing court was that the payments commence during the period of incarceration. Buege Decl. Ex. C.

On January 5, 2006, Petitioner agreed to participate in the IFRP program. Id. Over the course of the next two years, Petitioner was placed on various payment schedules, which he satisfied occasionally. See id. Exs. C, G, I. Petitioner was placed on IFRP refusal status in

March 2007 for failing to make a quarterly IFRP payment, and he remained on refusal status through the remainder of the year, even though he made a partial payment on December 11, 2007.  Id. Exs. C, G.  On November 14, 2007, Petitioner again began the BOP administrative appeals process asserting that BOP was unauthorized, in light of the J&C, to create a financial restitution and special assessment program schedule.  Pet. Ex. 6.  These appeals were rejected as untimely at each level of the appeals process.  See id. Exs. 7-9.

On February 28, 2008, Petitioner filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  In the Petition, he argues that BOP is improperly requiring him to make restitution payments while incarcerated in violation of the express terms to the contrary in his J&C.  Id. at 6.  He argues that BOP violated its own policy by placing him on IFRP refusal status, firing him from his UNICOR job, and imposing sanctions.  Id. at 6-7.  He requests that the Court order BOP to immediately cease its efforts to set restitution payment schedules and order BOP to place him back into the position he would have been in, but for BOP's actions.  Id. at 8.

Judge Boylan recommends that the Court dismiss the petition for lack of subject matter jurisdiction on the ground that Petitioner's true claim is a challenge to the imposition of his sentence and not the manner in which BOP executes it.  R&R at 7-8.  Accordingly, this challenge can only be raised in the sentencing court under 28 U.S.C. § 2255.  Id. at 9-10.  Judge Boylan also found, in the alternative, that even if the Court had subject matter jurisdiction, Petitioner's claim would fail because the sentencing court ordered that his restitution payment was due in full immediately.  Id. at 12.  Finally, Judge Boylan determined that Petitioner was not improperly sanctioned for refusing to sign the IFRP payment schedule because, regardless of any disagreement over his restitution payment, his special assessment was due immediately and

Petitioner refused to sign and abide by the terms of the IFRP schedule. Id. at 13-14.

### III. DISCUSSION

In reviewing an R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(c); see also D. Minn. LR 72.2(b). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

Petitioner objects to Judge Boylan's conclusion that subject matter jurisdiction is lacking. Petitioner's challenge is to the IFRP payment schedule generated by BOP to collect on his restitution requirement. He believes that the J&C requires restitution payments only upon release from custody. Therefore, he argues, BOP is incorrectly executing his sentence by requiring custodial payments through the IFRP. "A petitioner may attack the execution of his sentence through § 2241 in the district where he is incarcerated." Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002). Challenges to an IFRP payment schedule concern the execution of a sentence and are therefore correctly framed as § 2241 claims. Id. at 712. For this reason, the Court finds that it has subject matter jurisdiction in this case.

The language of the J&C can be interpreted to conclude that Petitioner is not required to pay restitution while he is incarcerated. However, the language of the J&C is not controlling in this case. An "oral sentence pronounced by the sentencing judge constitutes the judgment, and anything inconsistent with the judgment which is included in the commitment order is a nullity." Johnson v. Mabry, 602, F.2d 167, 170 (8th Cir. 1979); see also United States v. Foster, 514 F.3d 821, 825 (8th Cir. 2008) (finding that when an oral sentence conflicts with a written judgment,

the oral sentence controls). The transcript[2] from Petitioner's sentencing hearing clarifies that the sentencing judge intended for Petitioner to participate in the IFRP and to begin payments while incarcerated. He stated:

> The defendant shall abide by the rules of the Bureau of Prison's financial responsibility program and whatever balance is owing after he's released from prison will be paid in monthly installments of fifty dollars a month or five percent of his gross income, whichever is greater, and the first payment shall commence sixty days following his discharge from incarceration.

United States v. Frauendorfer, 8:04CR-04, Tr. of Sentencing Hr'g [Docket No. 76] at 996. The oral sentence directs Petitioner to participate in IFRP and then imposes the requirement that Petitioner make his first payment 60 days following release from custody. The out of custody payments apply to the balance of his restitution after participating in the program. Accordingly, BOP is not incorrectly executing Petitioner's sentence, and his habeas petition is dismissed. See United States v. Vanhorn, 344 F.3d 729, 731 (8th Cir. 2003) (finding that "nothing prohibits a court from choosing a manner of payment that is based upon a policy already in use by [BOP]"). Additionally, because BOP was appropriately executing Petitioner's sentence, it did not violate its own policies as Petitioner suggests. Therefore, Petitioner's habeas petition is dismissed, his Motion for Temporary Injunctive Relief and Motion to Supplement the Pleadings are denied as moot.

---

[2] While neither party included the transcript in the record, a court may take judicial notice of documents in the public record. United States v. Jordan, 913 F.2d 1286, 1287 (8th Cir. 1990).

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner's Objection [Docket No. 17] is **SUSTAINED** in part and **OVERRULED** in part;

2. The R&R [Docket No. 16] is **ADOPTED** in part;

3. Petitioner's Petition under 28 U.S.C. § 2241 [Docket No. 1] is **DISMISSED** with prejudice.

4. Petitioner's Motion for Temporary Injunctive Relief [Docket No. 14] is **DENIED** as moot; and

5. Petitioner's Motion to Supplement the Pleadings [Docket No. 19] is **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 2, 2009.